**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| Corkeitha Hicks, individually, on behalf of all others similarly situated, and on behalf of the Plan,<br><br>Plaintiffs,<br><br>v.<br><br>Waffle House, Inc.,<br><br>Defendant. | Case No. 1:26-cv-5066-ELR |

**DEFENDANT WAFFLE HOUSE, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY ACTION**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................... 1

BACKGROUND ...................................................................................... 3

I. Plaintiff voluntarily entered into arbitration agreements with WHI. ............. 3

II. Plaintiff agreed to arbitrate a broad range of claims and threshold arbitrability issues and waived class action rights. ...................................... 4

III. The Agreement applies to pre-existing claims and survives the end of any employment or benefit-plan relationship. .................................................... 7

PLAINTIFF'S ALLEGATIONS ........................................................................ 8

STANDARD OF REVIEW .............................................................................. 9

ARGUMENT ............................................................................................ 9

I. All questions regarding arbitrability must be decided by an arbitrator, not the Court. ...................................................................................... 9

II. Counts I and II should proceed to arbitration. ............................................. 14

A. The Agreement is valid and enforceable. ............................................ 14

B. Counts I and II fall squarely within the scope of the Agreement. ......... 17

III. Counts I and II must be arbitrated on an individual basis. .......................... 20

IV. The Court should stay the action pending arbitration of Counts I and II. ... 22

CONCLUSION ....................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Air Line Pilots Ass'n, Int'l v. Nw. Airlines, Inc.*,
627 F.2d 272 (D.C. Cir. 1980)....................19

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................20

*Anderson v. Waffle House, Inc.*,
920 F. Supp. 2d 685 (E.D. La. 2013)....................16

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................14, 20

*AT&T Techs., Inc. v. Commc'n Workers of Am.*,
475 U.S. 643 (1986)....................17

*Attix v. Carrington Mortg. Servs., Inc.*,
35 F.4th 1284 (11th Cir. 2022)....................9, 10, 12, 13

*Bowen v. First Fam. Fin. Servs., Inc.*,
233 F.3d 1331 (11th Cir. 2000)....................20

*Brown v. Chick-fil-A, Inc.*,
No. 1:23-CV-04503-ELR, 2024 WL 4535996 (N.D. Ga. June 18, 2024)....................passim

*Chamlee v. Jonesboro Nursing & Rehab. Ctr., LLC*,
No. 1:18-CV-05899-ELR, 2019 WL 6042273 (N.D. Ga. Aug. 14, 2019)....................9

*Chemence v. Quinn*,
No. 1:11-CV-01366-RLV, 2012 WL 12873615 (N.D. Ga. Oct. 15, 2012)....................22

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985)....................17

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)....................19, 20

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995)....................6, 10

*Ford of Kendall, LLC v. Lemus*,
No. 24-10831, 2024 WL 4449455 (11th Cir. Oct. 9, 2024)....................13

*Forrest v. Waffle House, Inc.*,
No. 1:05-cv-00572-NHT-CSC (M.D. Ala. Aug. 23, 2005)....................16, 17

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000)....................18

*Haag v. Waffle House, Inc.*,
No. 1:06-cv-00184-GET, 2006 WL 8433352 (N.D. Ga. Apr. 26, 2006)....................16

*Hearn v. Comcast Cable Commc'ns, LLC*,
992 F.3d 1209 (11th Cir. 2021)....................9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................12, 14

*Howell on behalf of N. Highland Co. Emp. Stock Ownership & 401(k) Plan v. Argent Tr. Co.*,
No. 1:22-CV-03959, 2024 WL 4369688 (N.D. Ga. Sep. 30, 2024)....................19

*Jenkins v. First Am. Cash Advance of Ga., LLC*,
400 F.3d 868 (11th Cir. 2005)....................20

*Jones v. Waffle House, Inc.*,
866 F.3d 1257 (11th Cir. 2017)....................passim

*JPay, Inc. v. Kobel*,
904 F.3d 923 (11th Cir. 2018)....................13

*Klay v. All Defendants*,
389 F.3d 1191 (11th Cir. 2004)....................15, 22

*Koelbl v. Sherwin-Williams Co.*,
No. 1:24-CV-02043, 2025 WL 3562641 (N.D. Ohio Dec. 12, 2025)....................23

*Lambert v. Austin Ind.*,
544 F.3d 1192 (11th Cir. 2008)....................16

*Louis v. Aetna Health Inc.*,
No. 616CV1922ORL22DCI, 2017 WL 6939166 (M.D. Fla. Jan. 13, 2017) ....................19

*Martinez v. Carnival Corp.*,
744 F.3d 1240 (11th Cir. 2014) ....................11, 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)....................17

*Parm v. Nat'l Bank of Cal., N.A.*,
835 F.3d 1331 (11th Cir. 2016) ....................14

*Parnell v. CashCall, Inc.*,
804 F.3d 1142 (11th Cir. 2015) ....................11, 12, 14, 15

*Pratt v. Waffle House, Inc.*,
No. 1:04-cv-0785-CAP (N.D. Ga. Feb. 23, 2005)....................17

*Randolph v. Green Tree Fin. Corp.-Ala.*,
244 F.3d 814 (11th Cir. 2001) ....................20

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................10, 11, 12

*Smith v. Sanders Realty Holdings, LLC*,
No. 120CV03617ELR, 2021 WL 2651816 (N.D. Ga. Jan. 15, 2021) .........15, 16

*Tadic v. Experian Info. Sols., Inc.*,
No. 1:18-CV-2911, 2019 WL 11499103 (N.D. Ga. Mar. 13, 2019)....................15

*Taylor v. Waffle House*,
No. 1:04-cv-786-ODE (N.D. Ga. filed Oct. 20, 2004) ....................17

*Verint Ams. Inc. v. Terminix Consumer Servs.*,
LLC, 817 F. Supp. 3d 1338 (N.D. Ga. 2025) ....................3, 9

*Williams v. Shapiro*,
161 F.4th 1313 (11th Cir. 2025) ....................21

*Williams v. Waffle House, Inc.*,
No. 12-950, 2012 WL 3438666 (E.D. La. Aug. 15, 2012)....................16

## STATUTES

9 U.S.C. § 3 ........ 11, 22

9 U.S.C. § 4 ........ 15

29 U.S.C. § 1109 ........ 9

29 U.S.C. § 1132(a)(2) ........ 9

29 U.S.C. § 1144(d) ........ 19

29 U.S.C. § 1182(b) ........ 8

# INTRODUCTION

This Motion requires nothing more than a straightforward application of well-settled Eleventh Circuit law and this Court's prior rulings. Plaintiff Corkeitha Hicks ("Plaintiff") brings this putative class action against her former employer, Waffle House, Inc. ("WHI"). She claims the tobacco-surcharge program under the Waffle House System Employee Benefit Plan (the "Plan") violates the Employee Retirement Income Security Act of 1974, as amended ("ERISA").[1] But before filing this putative class action lawsuit, Plaintiff signed written agreements prominently requiring that any dispute concerning her employment, the benefits of that employment, and the threshold arbitrability of such disputes be resolved through binding, individual arbitration rather than class-wide litigation. Plaintiff agreed to those terms twice: (1) when she applied for employment with WHI in October 2024, and again (2) when she applied for employment in June 2026—just three weeks before she filed the instant lawsuit.

WHI respectfully asks the Court to enforce Plaintiff's arbitration agreement according to its plain terms. In particular, the agreement contains a valid delegation provision requiring that all threshold questions of arbitrability—including interpretation, applicability, enforceability or formation of the agreement—be

[1] WHI does not concede that Plaintiff has plausibly alleged any claim or violation of the law. WHI reserves all arguments concerning the legal sufficiency of Plaintiff's allegations and claims.

decided by the *arbitrator*, not the Court. The Eleventh Circuit has addressed, and enforced, a materially identical delegation clause to the one at issue here. *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017). Therefore, binding precedent requires the Court to grant WHI's motion and compel arbitration. *See id.*; *see also Brown v. Chick-fil-A, Inc.*, No. 1:23-CV-04503-ELR, 2024 WL 4535996, at *5-6 (N.D. Ga. June 18, 2024) (Ross, J.) (holding that agreement contained valid delegation provision and granting motion to compel arbitration), *recons. denied*, 2025 WL 1842097 (N.D. Ga. Feb. 11, 2025). The Court's analysis can and should end there.

But even if the Court decides to wade deeper, the agreement is undisputably valid and enforceable. Plaintiff acknowledged that she reviewed the terms of WHI's "Arbitration Program," understood its terms, accepted them voluntarily, and agreed to resolve covered disputes through binding arbitration rather than litigation. And Counts I and II fall squarely within its scope *and* are subject to the agreement's class-action waiver provision, which requires Plaintiff to bring and arbitrate these claims on an individual basis.

Finally, because Count III arises from the same core allegations underlying Counts I and II, WHI respectfully requests that this Court stay the remainder of this action pending completion of the mandatory arbitration proceedings, as this Court has done in the past. *Brown*, 2024 WL 4535996, at *6 (Ross, J.)

## BACKGROUND

### I. Plaintiff voluntarily entered into arbitration agreements with WHI.

After about 20 years working on and off again for WHI, Plaintiff re-applied for a position at a Waffle House location in McDonough, Georgia on October 9, 2024. (Declaration of Scarlet Valencia ("Decl."[2]) ¶¶ 5-7, attached as **Exhibit 1**[3]; 2024 Separation Notice, attached as **Exhibit A**.) As part of her application, Plaintiff was presented with WHI's Mandatory Arbitration of Pre-Employment and/or Employment Disputes Arbitration Program. (Decl. ¶¶ 10-11; 2024 Arbitration Agreement ("2024 Agreement"), attached as **Exhibit B**.) The application advised Plaintiff that acceptance of the Arbitration Program was an express condition of WHI's review of her application and any subsequent employment and further advised Plaintiff that covered disputes would be resolved through final and binding arbitration rather than in court. (Decl. ¶¶ 7, 10-11, 13; 2024 Agreement at 3.) Plaintiff acknowledged that she had read the attached Arbitration Program, understood its terms, voluntarily accepted those terms, and expressly waived her right to a jury trial

---

[2] For the Court's convenience, the Declaration of Scarlet Valencia attaches Exhibits A through C. For transparency, we attach the declaration as Exhibit 1 and the exhibits attached thereto as Exhibits A through C.

[3] The Court may "consider evidence outside of the pleadings for purposes of a motion to compel arbitration." *Verint Ams. Inc. v. Terminix Consumer Servs*., LLC, 817 F. Supp. 3d 1338, 1341 n.1 (N.D. Ga. 2025).

with respect to covered claims. (2024 Agreement at 2-3, 8.) Plaintiff worked for WHI for approximately two weeks after executing the 2024 Agreement. (Decl. ¶¶ 8, 12.)

After Plaintiff stopped working for WHI in October 2024, she again applied for employment with WHI on June 1, 2026. (*Id.* ¶¶ 8-9.) As part of that application process, Plaintiff once again was presented with the Mandatory Arbitration of Pre-Employment and/or Employment Disputes Arbitration Program and again accepted its terms, which were identical to the terms she accepted as part of her October 2024 application. (*Id.* ¶¶ 9-11, 14; 2026 Arbitration Agreement ("2026 Agreement" or the "Agreement"), attached as **Exhibit C**.) Plaintiff acknowledged for a second time that she had reviewed and understood the Arbitration Program, accepted it voluntarily, and agreed that covered disputes with WHI would be resolved through binding arbitration rather than litigation. (2026 Agreement at 3, 8; *see* Decl. ¶ 14-15.) Thus, on these two separate occasions, Plaintiff voluntarily agreed to the Arbitration Program as a condition of WHI's consideration of her employment applications. (2024 Agreement; 2026 Agreement; *see* Decl. ¶¶ 7-15.)

## II. Plaintiff agreed to arbitrate a broad range of claims and threshold arbitrability issues and waived class action rights.

The 2024 and 2026 Agreements are identical in all material respects. (*Compare* 2024 Agreement, *with* 2026 Agreement.) Specifically, each agreement contains the same broad arbitration provision, delegation clause, class-action waiver, survival provision, and Federal Arbitration Act ("FAA") governing-law provision.

(*See id.*) Accordingly, the relevant terms discussed below apply equally to both agreements.[4]

Under WHI's Arbitration Program, Plaintiff and WHI both agreed to arbitration in consideration of (1) WHI's acceptance and review of Plaintiff's application, (2) their mutual promises to submit covered disputes to binding arbitration, and (3) any offer of employment that might result from the application. (*See* 2024 Agreement at 3; 2026 Agreement at 3.) The Agreement covers, specifically, "*any dispute or claim concerning* this Application, *my employment* or potential for employment with Waffle House or the terms, conditions or *benefits of such employment or potential employment, or whether such dispute or claim is arbitrable*." (2024 Agreement at 3 (emphases added); 2026 Agreement at 3 (emphases added).) Claims against WHI arising from "pay, wages, or benefits" or "[Plaintiff's] employment relationship with Waffle House" are among the expressly identified categories of disputes that Plaintiff and WHI (the "Parties") agreed "shall be conclusively determined by binding arbitration." (2024 Agreement at 3; 2026 Agreement at 3.) Such claims, the Parties agreed, "*will* be settled by final and binding

[4] Because the 2024 and 2026 Arbitration Agreements are identical in all material respects and the 2026 Agreement does not expressly supersede or invalidate the 2024 Agreement, both agreements are valid. And under these identical agreements, the result is the same: Plaintiff agreed in writing to arbitrate "past, present, or future" disputes, delegated gateway questions of arbitrability to the arbitrator, and agreed to the same Class Waiver provision. (2024 Agreement at 4; 2026 Agreement at 4.)

arbitration to be conducted in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association" ("AAA Rules"). (2024 Agreement at 3 (emphasis added); 2026 Agreement at 3 (emphasis added).)

Under the "Claims covered" section ("Section 1"), the Agreement expressly provides that it is to be construed "as broadly as possible" and applies to "any and all claims, past, present, or future" that Plaintiff may have against WHI or that WHI may have against Plaintiff. (2024 Agreement at 4; 2026 Agreement at 4.) Those expressly covered claims include, among other things, "claims for wages or other compensation due"; "claims for breach of contract"; "tort claims"; "claims for benefits, except claims under an employee benefit plan that either specifies that its claims procedure shall culminate in an arbitration procedure different than this"[5]; and "claims for violation of any federal, state or other governmental law, statute, regulation or ordinance, except claims excluded elsewhere in this Arbitration Program."[6] (2024 Agreement at 4; 2026 Agreement at 4.)

Three additional provisions are relevant here. ***First***, the Parties agreed that the Arbitrator, not a court, shall decide threshold questions of arbitrability. (2024

---

[5] As relevant, nothing in the Plan documents provides that claims under the Plan must proceed through an arbitration procedure different from WHI's Arbitration Program. Accordingly, the employee-benefit-plan exception in Section 1 of the Agreement does not apply.

[6] Some claims are excluded from coverage, but none of them are relevant here. (*See* 2024 Agreement at 4; 2026 Agreement at 4.)

Agreement at 6; 2026 Agreement at 6.) ***Second***, the Parties agreed that arbitrations shall proceed pursuant to the AAA Rules. (2024 Agreement at 3, 5; 2026 Agreement at 3, 5.) ***Third***, Plaintiff agreed that any covered dispute would only be pursued on an individual basis. (2024 Agreement at 6; 2026 Agreement at 6 ("There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, consolidated, and/or multi-claimant action.")) The Parties further agreed that neither side may join or consolidate claims with those of other WHI employees or applicants, or litigate or arbitrate any claim as a class representative or in any class collective-action capacity. (2024 Agreement at 6; 2026 Agreement at 6.) The "Class Waiver" provision further provides that if a court determines that any portion of the waiver is "invalid, unenforceable, unconscionable, void or voidable," only that portion will be litigated in court, while any remaining enforceable portion of the waiver remains in effect. (2024 Agreement at 6; 2026 Agreement at 6.)

### III. The Agreement applies to pre-existing claims and survives the end of any employment or benefit-plan relationship.

Finally, the Agreement states it is governed by and interpreted in accordance with the FAA and federal common law interpreting that statute. (2024 Agreement at 7; 2026 Agreement at 7.) The Agreement further provides that it may not be amended, modified, or terminated absent a written agreement accepted by both WHI and the associate. (2024 Agreement at 7; 2026 Agreement at 7.) Importantly, the Parties agreed that the Agreement's terms "shall survive the termination of an

associate's employment with Waffle House and the expiration of any benefit plan," and apply regardless of whether an applicant is ultimately hired. (2024 Agreement at 7; 2026 Agreement at 7.)

Accordingly, the Parties' arbitration obligations remain in effect notwithstanding the end of any employment relationship or benefit-plan participation. (2024 Agreement at 3-4, 7; 2026 Agreement at 3-4, 7.)

## PLAINTIFF'S ALLEGATIONS

On June 23, 2026—just three weeks after she re-applied for employment with WHI and accepted the terms of the Agreement—Plaintiff filed this putative class action against WHI on behalf of herself, a proposed class of plan participants, and, with respect to one claim, on behalf of the Plan. (*See* ECF No. 1 ("Compl.").) Plaintiff alleges that WHI imposed an unlawful "tobacco surcharge" in connection with her participation in the Plan. Specifically, the Complaint asserts three causes of action under ERISA. (*See* Compl.) Count I alleges that WHI failed to provide a compliant reasonable alternative standard in connection with the tobacco surcharge and seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for a violation of 29 U.S.C. § 1182(b). (*Id.* ¶¶ 50-51.) Count II alleges that WHI failed to provide required notice of a reasonable alternative standard and likewise seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for another violation of 29 U.S.C.

§ 1182(b). (*Id.* ¶¶ 57-58.) Count III asserts a claim for breach of fiduciary duty on behalf of the Plan under 29 U.S.C. § 1109 and 29 U.S.C. § 1132(a)(2). (*Id.* ¶¶ 66-67.)

**<u>STANDARD OF REVIEW</u>**

In resolving a motion to compel arbitration, courts apply a standard similar to that governing motions for summary judgment, and the court may "consider evidence outside of the pleadings[.]" *Verint, LLC*, 817 F. Supp. 3d at 1341 n.1; *see Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021). This Court has recognized that "[u]nder normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." *Chamlee v. Jonesboro Nursing & Rehab. Ctr., LLC*, No. 1:18-CV-05899-ELR, 2019 WL 6042273, at *1 (N.D. Ga. Aug. 14, 2019) (Ross, J.). In that case, "the party seeking to avoid arbitration must unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial," and further must "substantiate the denial of the contract with enough evidence to make the denial colorable." *Id.* (citations omitted).

**<u>ARGUMENT</u>**

**I. All questions regarding arbitrability must be decided by an arbitrator, not the Court.**

Parties "are free to have an arbitrator decide their threshold disputes" through a "delegation" provision. *Attix v. Carrington Mortg. Servs., Inc.*, 35 F.4th 1284,

1295 (11th Cir. 2022); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (citation omitted) ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."). These "threshold" or "gateway" disputes can include "questions about the 'arbitrability' of those claims, such as questions about the 'enforceability, scope, [or] applicability' of the parties' agreement to arbitrate their claims." *Attix*, 35 F.4th at 1295 (quoting *Jones*, 866 F.3d at 1264); *see Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).

Here, the Agreement contains a valid and enforceable delegation provision. (2024 Agreement at 6; 2026 Agreement at 6.) Under that provision, the Arbitrator, and not any federal, state, or local court or agency, "shall have authority to resolve ***any dispute*** **relating to the interpretation, applicability, enforceability or formation** of th[e] Arbitration Program and its application to any associate, including but not limited to any claim that all or any part of the Arbitration Program is void or voidable." (2024 Agreement at 6 (emphases added); 2026 Agreement at 6 (emphases added).) In *Jones v. Waffle House, Inc.*, the Eleventh Circuit held that a materially similar delegation provision was valid and enforceable. 866 F.3d at 1267. The provision at issue in *Jones* provided:

> [T]he Arbitrator, and not any federal, state, or local court or agency, shall have authority to resolve any dispute relating to the interpretation,

> applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.

*Id.*

The Eleventh Circuit held that "[t]his language clearly and unmistakably evinces the parties' intent to arbitrate all gateway issues." *Id.* In reaching that conclusion, the Eleventh Circuit emphasized that the clause applied to "any dispute" and was "strikingly similar" to delegation provisions it had previously enforced in prior decisions. *Id.* at 1267-68 (citing *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1148 (11th Cir. 2015), and *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1245 (11th Cir. 2014)); *see Rent-A-Center*, 561 U.S. at 68-72 (treating materially similar delegation clause as valid and concluding that it must be enforced under Sections 3 and 4 of the FAA)

The same conclusion follows here. The delegation clause contained in Plaintiff's Agreement with WHI is nearly identical to the delegation clauses in *Jones* and *Rent-A-Center*.[7] Indeed, the only difference between the delegation provision in *Jones* and the one here is that "formation of this *Agreement*" is now "formation of

---

[7] The only pertinent exception to the delegation clause appears in Section 5 of the Arbitration Program and provides that challenges concerning the interpretation, applicability, enforceability, or formation of the Class Waiver set forth in Section 6 may be resolved only by a court of competent jurisdiction. (*See* 2024 Agreement at 6-7; 2026 Agreement at 6-7.) The Class Waiver provision is discussed below in Section III, *infra*.

this *Arbitration Program and its application to any associate*," and "any part of this *Agreement*" is now "any part of *the Arbitration Program*." *Compare Jones*, 866 F.3d at 1267 (emphases added), *with* 2024 Agreement at 6 (emphases added), *and* 2026 Agreement at 6 (emphases added). The Agreement's delegation clause thus contains the exact same operative language the Eleventh Circuit viewed as significant: it encompasses "any dispute" concerning the Agreement's interpretation, applicability, enforceability, or formation and is materially indistinguishable from the provisions enforced in *Jones*, *Parnell*, and *Martinez*. *See Jones*, 866 F.3d at 1267; *Parnell*, 804 F.3d at 1148; *Martinez*, 744 F.3d at 1245. Thus, under binding precedent, the delegation clause constitutes "clear and unmistakable evidence" that the Parties here intended the arbitrator, not the Court, to decide any dispute concerning the Agreement's validity, interpretation, applicability, enforceability, and formation. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *Rent-A-Center*, 561 U.S. at 68-72; *Attix*, 35 F.4th at 1295; *Jones*, 866 F.3d at 1262; *Brown*, 2024 WL 4535996, at *4 (Ross, J.).

In addition, the Agreement requires that arbitrations proceed pursuant to the AAA Rules. (2024 Agreement at 3, 5; 2026 Agreement at 3, 5.) This is even further evidence that the Parties clearly and unmistakably delegated threshold questions of arbitrability to the arbitrator, not the Court. *See Attix*, 35 F.4th at 1297 (holding that incorporation of the AAA's arbitration rules is evidence of a "clear[] and

unmistakabl[e] agree[ment] to delegate questions of arbitrability to an arbitrator"); *JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018) ("Incorporating relevant AAA rules . . . is a clear and unmistakable indication of the parties' intent to decide not just whether the arbitration clause is *valid*, but whether it applies."); *see also Brown*, 2024 WL 4535996, at *4 (Ross, J.) (ruling that the incorporation of the AAA's consumer arbitration rules was "further evidence of [the parties'] intent to delegate threshold questions of arbitrability to an arbitrator.").

Accordingly, the Court should enforce the delegation clause and compel arbitration. *See Jones*, 866 F.3d at 1271 (reversing a district court's refusal to enforce a materially identical WHI delegation provision); *Attix*, 35 F.4th at 1288, 1295-96 (reversing denial of motion to compel arbitration because the parties clearly and unmistakably delegated threshold arbitrability disputes to the arbitrator); *Ford of Kendall, LLC v. Lemus*, No. 24-10831, 2024 WL 4449455, at *3 (11th Cir. Oct. 9, 2024) (reversing denial of motion to compel arbitration where agreement contained broad delegation clause and remanding with instructions to compel arbitration); *Brown*, 2024 WL 4535996, at *4-6 (Ross, J.) (enforcing the delegation provision in the parties' arbitration agreement, referring gateway arbitrability disputes to the arbitrator, and staying action pending completion of arbitration).

## II. Counts I and II should proceed to arbitration.

Because the Agreement includes a delegation provision, the Court solely retains jurisdiction to analyze a challenge to that specific provision, and not the Arbitration Agreement as a whole. *Jones*, 866 F.3d at 1264; *Parnell*, 804 F.3d at 1144; *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016) ("Only if [the court] determine[s] that the delegation clause is itself invalid or unenforceable may [the court] review the enforceability of the arbitration agreement as a whole."); *see also Henry Schein*, 586 U.S. at 68-69 ("[A] court may not decide an arbitrability question that the parties have delegated to an arbitrator"; "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue"). But even if the Court decides to address gateway arbitrability questions, the Court should compel arbitration because a valid agreement was formed, and Counts I and II fall squarely within the scope of the Agreement.

### A. The Agreement is valid and enforceable.

The Agreement is governed by the FAA. (2024 Agreement at 7 ("This Arbitration Program shall be governed by and interpreted in accordance with the [FAA] and any federal common law interpreting that Act"); 2026 Agreement at 7 (same).) The Supreme Court and the Eleventh Circuit have held that the FAA, 9 U.S.C. § 1 *et seq.*, reflects "both a liberal policy favoring arbitration and the

fundamental principle that arbitration is a matter of contract." *Jones*, 866 F.3d at 1263-64 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Under the FAA, the court's role is limited to determining whether the parties have a valid agreement to arbitrate, and whether any constraints outside the parties' agreement foreclose arbitration. *See id.*; *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004); *Tadic v. Experian Info. Sols., Inc.*, No. 1:18-CV-2911, 2019 WL 11499103, at *2 (N.D. Ga. Mar. 13, 2019); *see also* 9 U.S.C. § 4.

Courts analyze whether a valid arbitration exists using state-law contract principles, even when the FAA applies. *See Smith v. Sanders Realty Holdings, LLC*, No. 120CV03617ELRCMS, 2021 WL 2651816, at *4 (N.D. Ga. Jan. 15, 2021), *report and recommendation adopted*, No. 1:20-CV-03617-ELR, 2021 WL 2651817 (N.D. Ga. Apr. 19, 2021) (Ross, J.); *Parnell*, 804 F.3d at 1147 ("When federal courts interpret arbitration agreements, state contract law governs and directs the courts' analyses of whether the parties committed an issue to arbitration."); *Brown*, 2024 WL 4535996, at *3 (Ross, J.) (same). Under Georgia law, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." *Smith*, 2021 WL 2651816, at *4.

Here, Plaintiff assented to the Arbitration Program on two separate occasions. Plaintiff electronically signed and acknowledged the Arbitration Program first on

October 9, 2024, and again on June 1, 2026. (*See* Decl. ¶¶ 12-15; 2024 Agreement at 3, 8; 2026 Agreement at 3, 8.) In each instance, Plaintiff expressly acknowledged that she had read the Agreement, understood the terms, voluntarily accepted those terms, and agreed to waive her right to a jury trial with respect to covered claims. (*See* 2024 Agreement at 3, 8; 2026 Agreement at 3, 8; Decl. ¶¶ 12, 14.)

Further, the Agreement is supported by adequate consideration, is mutually binding, and concerns a subject matter upon which contracts can operate. WHI and Plaintiff both agreed to arbitrate covered disputes, the Agreement expressly provides that WHI's acceptance or review of Plaintiff's application constitutes WHI's agreement to the Arbitration Program, and Plaintiff continued employment after execution of the 2024 Agreement. (*See* 2024 Agreement at 3, 8; 2026 Agreement at 3, 8; Decl. ¶¶ 10-15); *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) ("To satisfy the consideration requirement under Georgia law, an accepting party to a contract can either tender bargained-for performance or make a mutual promise."); *Smith*, 2021 WL 2651816, at *4 ("Both federal and Georgia law make clear that an employee may manifest assent to an arbitration agreement by continuing in his or her employment"). And the Arbitration Agreement covers Plaintiff's terms of employment, which is a valid subject matter. *See Smith*, 2021 WL 2651816, at *5.

Notably, district courts consistently have found WHI's arbitration agreement to be valid and enforceable.[8] Accordingly, the Agreement is valid and enforceable.

**B. Counts I and II fall squarely within the scope of the Agreement.**

"The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citation omitted). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted). Indeed, "by its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v.*

[8] *See, e.g.*, *Jones*, 866 F.3d at 1273; *Anderson v. Waffle House, Inc.*, 920 F. Supp. 2d 685, 695 (E.D. La. 2013); *Williams v. Waffle House, Inc.*, No. 12-950, 2012 WL 3438666, at *2 (E.D. La. Aug. 15, 2012); *Haag v. Waffle House, Inc.*, No. 1:06-cv-00184-GET, 2006 WL 8433352, at *7 (N.D. Ga. Apr. 26, 2006), *R. & R. adopted*, 2006 WL 8433538 (N.D. Ga. June 6, 2006); *Forrest v. Waffle House, Inc.*, No. 1:05-cv-00572-NHT-CSC (M.D. Ala. Aug. 23, 2005), ECF No. 12 at 8, *R. & R. adopted*, ECF No. 13 (M.D. Ala. Sep. 15, 2005); *Pratt v. Waffle House, Inc.*, No. 1:04-cv-0785-CAP (N.D. Ga. Feb. 23, 2005), ECF No. 15 at 11; *Taylor v. Waffle House*, No. 1:04-cv-786-ODE (N.D. Ga. filed Oct. 20, 2004), ECF No. 14 at 10-11; *Safley-Brasher v. Waffle House*, No. 3:04-cv-00158-MEF-VPM (M.D. Ala. July 7, 2004), ECF No. 12.

*Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "Even if the result is piecemeal litigation, courts must 'rigorously enforce agreements to arbitrate.'" *Brown*, 2024 WL 4535996, at *2 (Ross, J.) (quoting *Dean Witter Reynolds*, 470 U.S. at 221), *recons. denied*, 2025 WL 1842097 (N.D. Ga. Feb. 11, 2025).

The Agreement explicitly covers "any and all claims, past, present, or future" that an associate may have against WHI, including claims that otherwise would be heard in court under federal law, claims for benefits, and claims for violations of federal statutes. (2024 Agreement at 4; 2026 Agreement at 4.) The Agreement also expressly covers disputes concerning "pay, wages or benefits" and claims for "other compensation" due. (2024 Agreement at 3-4; 2026 Agreement at 3-4.)

Counts I and II of the Complaint—two statutory violation claims that "Plaintiff and [putative] class members" seek to "enforce pursuant to 29 U.S.C. § 1132(a)(3)" only—arise directly from Plaintiff's participation in the Plan as part of her employment at WHI. (*See* Compl. ¶¶ 50-51, 57-58.) Specifically, the Complaint alleges that Plaintiff participated in the Plan, paid tobacco surcharges to maintain coverage, and asks for certain relief because of this allegedly unlawful practice. (*See id.* ¶¶ 52, 59.) These claims would otherwise be heard under federal law, assert violations of a federal statute, and seek either "benefits" or "other compensation" within the meaning of the Arbitration Agreement. (2024 Agreement

at 3-4; 2026 Agreement at 3-4.) Because Counts I and II fall explicitly within the scope of the Agreement, Plaintiff is obligated to pursue them in arbitration.

Plaintiff may attempt to suggest ERISA claims are unique and are somehow precluded from arbitration. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue.") Not so. Nothing in ERISA contains any "clearly expressed congressional intention" to displace the FAA's mandate that arbitration agreements be enforced according to their terms. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (citation omitted) (explaining that a party asserting that one federal statute overrides another bears the "heavy burden" of showing a clear congressional intent to do so). To the contrary, ERISA expressly provides that it shall not be construed to "alter, amend, modify, invalidate, impair, or supersede any law of the United States," subject to exceptions not relevant here. 29 U.S.C. § 1144(d). This provision is a "strong, comprehensive, express statement that ERISA is not to be read as displacing by implication any pre-existing federal legislation," including the FAA. *Air Line Pilots Ass'n, Int'l v. Nw. Airlines, Inc.*, 627 F.2d 272, 276 (D.C. Cir. 1980). Accordingly, ERISA does not alter the FAA's requirement that valid arbitration agreements be enforced according to their terms. *See, e.g.*, *Howell on behalf of N. Highland Co. Emp. Stock Ownership & 401(k) Plan v. Argent Tr. Co.*,

No. 1:22-CV-03959, 2024 WL 4369688, at *7 (N.D. Ga. Sep. 30, 2024) ("This Court therefore has no difficulty concluding that ERISA claims are generally subject to arbitration."); *Louis v. Aetna Health Inc.*, No. 616CV1922ORL22DCI, 2017 WL 6939166, at *5 (M.D. Fla. Jan. 13, 2017) (ruling that plaintiff's ERISA "claim is subject to arbitration under the explicit language of the Dispute Resolution Provision").

**III. Counts I and II must be arbitrated on an individual basis.**

As a final matter, arbitration agreements may require claims to proceed on an individual basis rather than through class or collective proceedings, which is known as a "class waiver." The Supreme Court and the Eleventh Circuit have repeatedly held that class-action waivers in arbitration agreements are valid and enforceable. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 236-38 (2013); *Concepcion*, 563 U.S. at 344-52; *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877-78 (11th Cir. 2005) (holding "that arbitration agreements precluding class action relief are valid and enforceable."); *see also Randolph v. Green Tree Fin. Corp.-Ala.*, 244 F.3d 814, 819 (11th Cir. 2001) (holding that an agreement to arbitrate statutory claims remained enforceable even though it precluded the plaintiff from using class-action procedures); *Bowen v. First Fam. Fin. Servs., Inc.*, 233 F.3d 1331, 1338-39 (11th Cir. 2000) (holding that the right to pursue TILA claims through a class action was waivable, and recognizing that "there exists

a difference between the availability of the class action tool, and possessing a blanket right to that tool under any circumstance."). Further, because nothing in ERISA contains any "clearly expressed congressional intention" to displace the FAA's mandate that arbitration agreements be enforced according to their terms, *Epic*, 584 U.S. at 510 (citation omitted), class action waivers are equally enforceable in ERISA cases, subject to limited exceptions not at issue here. *See Williams v. Shapiro*, 161 F.4th 1313, 1321-22 (11th Cir. 2025).

Here, the Class Waiver provides that Plaintiff may not bring covered claims against WHI on behalf of a putative class. Specifically, the Agreement's Class Waiver states:

> No Class, Collective, Consolidated, and/or Multi-Claimant Action Arbitrations ("Class Waiver"): There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective, consolidated, and/or multi-claimant action. Nor will the Arbitrator have any authority to hear or arbitrate any such dispute.

(2024 Agreement at 6 (emphasis in original); 2026 Agreement at 6 (same).)

Plaintiff, however, brings Counts I and II of the Complaint on behalf of herself and "the Class." (*See* Compl. ¶¶ 37-45, 47, 51-52, 54, 58-59.) The Agreement expressly provides that there is "no right or authority" for covered disputes to be brought, heard, *or* arbitrated as a class, collective, consolidated, or multi-claimant action, and further prohibits either party from arbitrating claims as a "member of a class or collective action capacity." (2024 Agreement at 6; 2026 Agreement at 6.)

While Plaintiff remains free to pursue these claims on an individual basis, the Agreement strictly forecloses the use of class procedures for Counts I and II. Accordingly, the Class Waiver by its terms requires that Counts I and II be arbitrated solely on an individual basis.

**IV. The Court should stay the action pending arbitration of Counts I and II.**

The FAA provides that, if an issue before the Court is referred to arbitration under a written agreement, the Court shall stay the rest of the action pending arbitration. 9 U.S.C. § 3. Indeed, courts have broad discretion to stay non-arbitrable claims where doing so promotes efficiency and avoids piecemeal litigation. *See Klay*, 389 F.3d at 1204 (recognizing that courts may stay non-arbitrable claims depending on whether arbitrable claims predominate and whether it is feasible to proceed simultaneously). As such, this Court and others in this District have stayed entire actions pending an arbitrator's determination of threshold arbitrability questions where the claims are factually intertwined. *See Brown*, 2024 WL 4535996, at *6 (Ross, J.) ("[B]ecause the Court refers the gateway disputes of arbitrability to an arbitrator, it also grants Defendant's request to stay this case in its entirety pending the conclusion of that arbitration."); *Chemence v. Quinn*, No. 1:11-CV-01366-RLV, 2012 WL 12873615, at *6 (N.D. Ga. Oct. 15, 2012).

Here, a stay is particularly appropriate because the arbitrable and non-arbitrable claims arise from the same alleged course of conduct and depend on

substantially overlapping factual and legal issues. Counts I and II challenge the legality of WHI's tobacco-surcharge program. (*See* Compl. ¶¶ 46-59.) Count III likewise rests on the same underlying allegations, asserting that WHI breached fiduciary duties by merely applying the terms of the Plan. (*See id.* ¶¶ 60-67.) Plaintiff's Complaint expressly incorporates the same factual allegations into each count and alleges that the tobacco-surcharge program violated ERISA in the manner described throughout the Complaint. (*See id.* ¶¶ 15-36, 46, 53, 60).

Permitting Count III to proceed while Counts I and II are being arbitrated would create a substantial risk of duplicative proceedings, inconsistent rulings, and unnecessary expenditure of party and judicial resources. Accordingly, if the Court compels arbitration of Counts I and II, it should stay this action in its entirety pending the completion of the arbitration proceedings on Counts I and II. *See, e.g.*, *Brown*, 2024 WL 4535996, at *6 (Ross, J.); *Koelbl v. Sherwin-Williams Co.*, No. 1:24-CV-02043, 2025 WL 3562641, at *8 (N.D. Ohio Dec. 12, 2025) (granting discretionary stay of ERISA breach-of-fiduciary-duty claim in similar tobacco surcharge case pending arbitration of related claims).

## CONCLUSION

For the foregoing reasons, WHI respectfully requests that the Court grant its Motion to Compel Arbitration, enforce the Parties' Arbitration Agreement according to its terms, and compel individual arbitration of Counts I and II of Plaintiff's

Complaint. WHI further requests that the Court stay this action pending completion of the arbitration proceedings and resolution of any gateway issues that the Parties expressly agreed would be decided by the arbitrator.

Respectfully submitted this 6th day of October, 2026.

*/s/ R. Blake Crohan*
R. Blake Crohan
Georgia Bar No. 512642
Beth K. Boatright
Georgia Bar No. 409481
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree St., Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: blake.crohan@alston.com
Email: beth.boatright@alston.com

*Counsel for Waffle House, Inc.*

**CERTIFICATE OF SERVICE AND TYPE-SIZE COMPLIANCE**

Pursuant to LR 5.1, the foregoing pleading is prepared in Times New Roman font, 14 point, and I hereby certify that the foregoing document was filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

Dated: October 6, 2026

*/s/ R. Blake Crohan*
R. Blake Crohan
Georgia Bar No. 512642
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree St., Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: blake.crohan@alston.com

*Counsel for Waffle House, Inc.*