**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **CORKEITHA HICKS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WAFFLE HOUSE, INC.**<br><br>**Defendants.** | Civil Action No.:<br>1:26-cv-05066-ELR |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

COMES NOW, Plaintiff in the above-referenced action, and hereby respectfully requests leave of court to file a First Amended Complaint, with a copy of the proposed First Amended Complaint being attached hereto as Exhibit A. As grounds hereto, Plaintiff states as follows:

1. This matter was originally filed in the United States District Court for the Middle District of Georgia on June 23, 2026. By agreement of the parties, and pursuant to a forum selection clause in the health plan at issue, this matter was transferred to this Honorable Court on September 3, 2026 (ECF No. 7).

2. This case arises out of Waffle House, Inc.'s improper collection and utilization of a tobacco surcharge imposed on participants of its health plan. Plaintiff's original Complaint asserts three claims: ERISA statutory violation claims under Counts I and II, and a breach of fiduciary duty claim under ERISA in Count III.

3. On October 6, 2026, Defendant filed a Motion to Compel Arbitration of Count I and Count II of Plaintiff's original Complaint. (ECF No. 16). Count I and Count II of Plaintiff's original Complaint assert claims for statutory violations under ERISA. Defendant did not move to

compel arbitration with respect to Count III of the original Complaint, which is a representative claim seeking plan-wide relief for breach of fiduciary duty under 29 U.S.C. §§ 1109(a) and 1132(a)(2).

4. Plaintiff intends to proceed only with her claim seeking plan-wide relief for breach of fiduciary duty under ERISA. Plaintiff has no intention of proceeding with her statutory violation claims asserted in Count I and Count II either in arbitration or in this Court. Accordingly, the proposed First Amended Complaint drops Count I and II of Plaintiff's original Complaint, and clarifies that Plaintiff is only proceeding with the breach of fiduciary duty claim for plan-wide relief under 29 U.S.C. §§ 1109(a) and 1132(a)(2). Plaintiff's proposed First Amended Complaint makes changes and deletions clarifying that Plaintiff is only proceeding with the breach of fiduciary duty claim for plan-wide relief; it does so by dropping Counts I and II from Plaintiff's original Complaint, and naming Waffle House, Inc.'s Health Plan Administrative Committee as a party to the action.

5. Federal Rule of Civil Procedure 15 provides that the Court may give Plaintiff leave to amend her Complaint and explains that "[t]he court should freely give leave when justice so requires." Here, allowing the proposed First Amended Complaint will not result in prejudice, as this case is in its initial stages and no Answer or Rule 12 motion has been filed. Further, the proposed First Amended Complaint simply drops claims previously asserted and makes further revisions to clarify that Plaintiff is only asserting a claim for breach of fiduciary duty under ERISA in a representative capacity, and is not pursuing individual claims or any other ERISA claim. Further, the joinder of Waffle House, Inc.'s Health Plan Administrative Committee as a named party in the action will not result in prejudice, as it is an administrative committee simply acting at the direction and control of Waffle House, Inc.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Court to allow her to file the attached First Amended Complaint.

Dated: November 11, 2026

Respectfully submitted,

*/s/ R. Brent Irby*

R. Brent Irby
Georgia Bar No.: 224232
Lyons Irby, LLC
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 335-9102
Facsimile: (866) 618-4629
brent@lyonsirby.com

*/s/ William Greg Dobson*

William Greg Dobson
Georgia Bar No.: 237770
William Greg Dobson, PC
333 Northside Drive, Suite A
Macon, GA 31210
Email: wgd@lddlawyers.com

*Counsel forPlaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 11, 2026, I electronically filed the above and foregoing document via the Court's CM/ECF system, which will send notification of said filing to all counsel of record.

*/s/ Brent Irby*
R. Brent Irby

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **CORKEITHA HICKS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WAFFLE HOUSE, INC. and its HEALTH PLAN ADMINISTRATIVE COMMITTEE**<br><br>**Defendants.** | Civil Action No.:<br>1:26-cv-05066-ELR |

## FIRST AMENDED COMPLAINT

Plaintiff Corkeitha Hicks brings this First Amended Complaint against Waffle House, Inc., and its Health Plan Administrative Committee. Plaintiff makes the following allegations based upon personal knowledge and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. Waffle House, Inc. ("Waffle House") is an American restaurant chain with over 2,000 locations in 25 states in the United States. The bulk of the locations are in the Midwest and the South. The menu consists mainly of Southern breakfast food. Waffle House is headquartered in Norcross, Georgia.

2. Upon information and belief, all regular employees and eligible dependents and certain part-time employees of Waffle House and its subsidiaries can receive health insurance coverage by participating in a medical plan sponsored and administered by Waffle House via its Health Plan Administrative Committee. These medical plans operate under the plan named the

Waffle House System Employee Benefit Plan. ("the Plan"). The Plan Administrator and Named Fiduciary is the Health Plan Administrative Committee.

3. For those employees and their dependents to participate in the Plan, they must attest whether they are a tobacco user. Those who do use tobacco products are required to pay an additional fee of at least $92 per month —or $1,104 per year—to maintain coverage.

4. Fees of this sort, frequently referred to as "tobacco surcharges", have proliferated in recent years. But to be legal, they must strictly comply with the terms of the Employee Retirement Income Security Act ("ERISA"), applied to medical plans by the Patient Protection and Affordable Care Act, and implementing regulations. Waffle House did not do so, and therefore collected the tobacco surcharge in violation of the law and in violation of its duties to plan participants and the Plan.

5. More specifically, ERISA's anti-discrimination provisions prohibit any medical plan from charging an extra premium or fee based on any health status related factor, including tobacco use, unless that fee is part of a *bona fide* "wellness program". To qualify as a compliant wellness program, a company must offer a "reasonable alternative standard", usually in the form of a tobacco cessation program, completion of which allows participants to avoid the entire tobacco surcharge. In other words, a reasonable alternative standard will refund a tobacco user all tobacco surcharges paid during the operative plan year or allow them to avoid paying it in the first place.

6. Waffle House did not properly disclose or inform Plaintiff and plan participants in every Plan communication of an available wellness program to avoid tobacco surcharges. Further, a compliant wellness program's reasonable alternative standard must allow plan participants to receive the program's "full reward"; that is, avoid the surcharge for the entire plan year upon

completion of the alternative standard, and must provide notice that such an alternative program exists in every Plan communication regarding the surcharge. This notice must also include a statement that recommendations of an individual's personal physician in formulating a reasonable alternative standard will be accommodated.

7. Because the wellness program does not meet the necessary criteria, Waffle House cannot assert that the program is non-discriminatory, and thus the tobacco surcharge is unlawful and discriminatory in violation of ERISA. Because all elements of the wellness program's safe harbor must be satisfied, the tobacco surcharge lack of adequate notice and failure to provide the full reward of the program violates ERISA's anti-discrimination requirements, and its collection by Waffle House was, and remains, unlawful.

8. Waffle House, through its Committee, controls the administration of the tobacco surcharge, determining which Plan participants are charged and withholding the surcharge amounts directly from Plan participants' paychecks. Upon information and belief, these amounts are not placed in a trust account for the Plan, but are instead deposited into Waffle House's general accounts. Waffle House has a fiduciary responsibility to ensure that these funds are used to support coverage for its employees' health insurance. Instead, by charging and collecting these unlawful surcharges, Waffle House has increased its own bottom line, allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards. These practices constitute self-dealing and violate ERISA's fiduciary duty requirements, which mandate that Plan assets be managed exclusively in the interest of participants and beneficiaries.

9. Plaintiff was a regular, full-time employee of Waffle House who was required to pay the illegal tobacco surcharge to maintain health insurance coverage. Plaintiff brings this

lawsuit in a representative capacity for plan-wide relief under 29 U.S.C. §§ 1109(a) and 1132(a)(2) for breaches of fiduciary duties.

## PARTIES, JURISDICTION, AND VENUE

10. Plaintiff Corkeitha Hicks is a citizen of the State of Georgia. Plaintiff Hicks worked for Waffle House as a server in Forsyth, Georgia. Plaintiff Hicks participated in the Plan in connection with her work and paid the $92 monthly tobacco surcharge. Waffle House deducted $23 from her weekly wages under the payroll deduction.

11. Defendant Waffle House, Inc. is a corporation organized under the laws of the State of Georgia with its principal place of business in Norcross. Waffle House is registered to do and does do business in the State of Georgia.

12. Defendant Waffle House, Inc. Health Plan Administrative Committee acts and serves at the direction of Waffle House, Inc. and is the Plan Administrator and Named Fiduciary of the Plan at issue. Waffle House, Inc. and its Health Plan Administrative Committee will be referred to collectively at times as "Waffle House."

13. At all times relevant to this lawsuit, Waffle House operated the Plan, which was available for Waffle House employees and their dependents. The Plan is an employee benefit plan subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1003(a).

14. Plaintiff was a participant in the Plan pursuant to 29 U.S.C. § 1102(7). Plaintiff brings her claim for breach of fiduciary duty under 29 U.S.C. §§ 1109(a) and 1132(a)(2) in a representative capacity for Plan-wide relief. Plaintiff does not assert a claim in her individual capacity.

15. This Court possesses subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute.

16. Venue is proper in this District pursuant to the forum selection provision contained in the Plan.

## FACTUAL ALLEGATIONS

### *A. Waffle House's Tobacco Surcharge Violates ERISA's Anti-Discrimination Rule.*

17. To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use and vaccination status. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." 29 U.S.C. § 1182(b)(1).

18. Waffle House's tobacco surcharge violates this provision. Plaintiff and other plan participants were required to pay an additional premium or contribution per year based on a "health status-related factor" — their use of tobacco products. Payment of the tobacco surcharge was required for Plaintiff to remain insured under the Plan.

19. Specifically, at all times relevant herein, any employee who used tobacco products was required to attest that they are not tobacco users as part of the enrollment process. The tobacco surcharge was a default charge applied to participants requiring that they affirmatively opt out to ensure they would not be charged. Participants who fail to opt out of the tobacco surcharge would be charged roughly $23 per week for an annual amount of roughly $1,104.

20. During the relevant time period, Waffle House, via its Committee, controlled the tobacco surcharge, including determining which participants were charged, and by withholding the tobacco surcharge from a participant's paycheck.

21. The Plan offered and administered by Waffle House requires individuals to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any tobacco use and fails to meet the safe harbor exception.

### B. ***Waffle House Cannot Avail Itself of ERISA's Safe Harbor for Wellness Programs.***

22. Waffle House failed to provide a compliant wellness program for tobacco-using participants. As discussed further below, to qualify as a compliant wellness program under ERISA, an employer must offer a "reasonable alternative standard" for participants who cannot meet the initial health standard; in this case, being tobacco-free. The standard is intended to ensure that participants have an opportunity to avoid surcharges, such as tobacco-related premiums, by participating in wellness programs like smoking cessation programs. Additionally, employees must receive the ***full reward*** once they meet the alternative standard. In other words, there must be a way for participants to avoid the surcharge for the ***full plan year.***

23. ERISA offers a limited exception to its general rules by providing safe harbor for certain wellness programs. *See* 29 U.S.C. § 1182(b)(2)(B). This narrow exception means employers can offer incentives to plan participants, such as premium discounts, rebates, or adjustments to cost-sharing, in exchange for their participation in these wellness programs. One way for plans to take advantage of the safe harbor provisions while charging participants additional surcharges is to offer programs designed to increase the well-being of the person such as, for example, a smoking cessation program. The regulations covering health-contingent wellness

programs require that the wellness programs, like smoking cessation programs, satisfy certain criteria. *See* 78 FR 33158, 33159.

24. A plan seeking to qualify for the wellness program exception must offer a program that is "reasonable." The Department of Labor has issued regulations regarding what "reasonable" health-contingent programs must include. To qualify under ERISA, there are three basic requirements: First, the program must have a realistic chance of improving health or preventing disease for participants, and cannot be excessively difficult, discriminatory based on health, or use questionable methods; second, everyone in a similar situation must have a chance to earn the "full reward" — in other words, the program must offer a reasonable alternative or waiver for those who cannot meet the initial health standard; third, the program must be disclosed "in ***all*** plan materials" describing the reward and explaining the availability of a reasonable alternative standard or waiver. 29 C.F.R. § 2590.702(f)(4) (emphasis added).

25. Waffle House's tobacco surcharge program did not and does not satisfy the requirements that it provide a reasonable alternative standard, and that it provide notice of a reasonable and alternative standard in all Plan materials.

26. During the applicable limitations period, Waffle House's wellness program allows certain participants who complete a quit-tobacco program to avoid the surcharge, but only certain participants, and only on a go-forward basis. As stated in Waffle House's Summary Plan Description for 2024:

**Reasonable Alternatives to the Tobacco/Vape Surcharge:**

- Those who do not use any form of tobacco or vaping can avoid the surcharge by timely returning the completed attestation form in which the Associate lets the Company know that the Associate and/or the covered spouse do not use any form of nicotine or tobacco products.
- Users of tobacco/vaping products can have the surcharge removed by timely completing Optum's Quit for Life Tobacco Cessation Program. The Health

Plan pays 100% of the Quit for Life Tobacco Cessation Program for Associates and their family members who are enrolled in any of the medical plans offered by Waffle House. The Health Plan provides each user with up to two (2) enrollments in the Quit for Life Program during any plan year. The Quit for Life Program includes an eight (8) week supply of nicotine replacement therapy products, also at no additional cost to the member. All other cessation-related medications or prescriptions are subject to the Health Plan's prescription drug program under Elixir.

- Quit for Life Tobacco Cessation Program contact information –
  - 866-QUIT-4-LIFE (866-784-8454)
  - Visit www.quitnow.net
- In order to receive a full refund, and remove the surcharge going forward, the program must be completed no later than four (4) months after the user's coverage effective date or the beginning of the Plan Year (anytime between June 1 through September 30).
- If the user does not complete the program within the time period described above, but completes it anytime later during the plan year, the surcharge can be removed prospectively for the remaining weeks of the plan year.

27. By way of illustration, this means that participants who complete the Quit for Life Tobacco Cessation program by September 30 will have the tobacco use supplemental premium removed retroactively from June 1 (which is the beginning of Waffle House's Plan Year). However, participants who complete the program on or after October 1 will not be retroactively reimbursed for any premiums already paid during the Plan Year, which violates ERISA's requirement that participants receive the "***full reward***" upon satisfying the alternative standard, as it unfairly denies retroactive relief to participants who complete the program after the September 30 deadline.

28. Waffle House, during the applicable limitations period, maintained exclusive control over the tobacco surcharge, including determinations as to which participants were and continue to be required to pay the surcharge. Waffle House has a fiduciary responsibility to ensure that these funds are used to support coverage for its employees' health insurance. Instead, by charging and collecting this unlawful surcharge, Waffle House has increased its own bottom line,

allowing it to unjustly realize financial benefits it would not have otherwise obtained without imposing these surcharges, in violation of ERISA's fiduciary duty standards.

29. Additionally, ERISA requires that employers clearly communicate the availability of reasonable alternative standards to all employees in all Plan materials and Plan communications. Waffle House's Plan documents fail to adequately communicate this option or only provide partial notice by specifying that quitting tobacco after September 30 would allow participants to avoid the surcharge only prospectively, in violation of ERISA's notification requirements.

30. Because the Plan fails to provide a compliant reasonable alternative standard that allows participants to receive the "full reward"— avoiding the surcharge for the entire plan year — Waffle House's wellness program fails to provide reasonable alternative standards and fails to comply with the requirement to make available the "full reward" to participants. In other words, while Waffle House offers a quit-tobacco program, only certain employees who complete it can fully avoid the surcharge while others can only avoid the surcharge on a go-forward basis and are not eligible for retroactive reimbursement for surcharges already paid during the Plan year. On these bases, the Plan violates ERISA's anti-discrimination provisions.

### C. ***Waffle House Failed to Notify Participants of a Reasonable Alternative Standard.***

31. To qualify as a compliant wellness program under the regulations, employers must provide notice of the availability of a reasonable alternative standard. The regulations require plans and issuers to "disclose ***in all plan materials*** describing the terms of an outcome-based wellness program, and in any disclosure that an individual did not satisfy an initial outcome-based standard, the availability of a reasonable alternative standard to qualify for the reward (and, if applicable, the possibility of waiver of the otherwise applicable standard), including contact information for

obtaining a reasonable alternative standard and a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(3)(v) (emphasis added); see also 42 U.S.C. § 300gg-4(j)(3)(E). The regulations make clear that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description ("SPD"), as well as in the applicable governing plan documents (which must be provided upon request), if compliance with the wellness program affects premiums, cost sharing, or other benefits under the terms of the plan." 78 FR 33158, 33166 n. 24.

32. Upon information and belief, Waffle House does not include adequate notification in ***all*** Plan materials. While the 2019 and 2024 Summary Plan Descriptions mention the Quit for Life Tobacco Cessation program, it fails to notify participants of the availability of a reasonable alternative standard that would eliminate the tobacco surcharge for the entire plan year, in violation of ERISA. These documents do not inform employees that completing the program will entitle them to the full reward of avoiding the surcharge for the entire year. Instead, employees are led to believe that the surcharge can only be avoided prospectively if completed before September 30, which discourages participation and violates ERISA's requirement that all participants be clearly informed of their ability to avoid surcharges through reasonable alternative standards. Further, upon information and belief, the enrollment guides and summary of benefits and coverage documents do not mention or reference the tobacco surcharge or the wellness program. Upon information and belief, the Summary Plan Descriptions are the only plan materials that reference the tobacco surcharge or the wellness program. The Summary Plan Descriptions also omit any mention that participants' physicians' recommendations will be accommodated, as required by

ERISA's wellness program regulations. These deficiencies deprive participants of the information necessary to fully understand and exercise their rights.

33. Upon information and belief, Waffle House has other communications regarding the tobacco surcharge and wellness program that do not address participants' rights to an alternative standard or the ability to eliminate surcharges retroactively.

34. Upon information and belief, Waffle House's failure to adequately disclose information regarding a reasonable alternative standard in all plan materials deprives employees of the ability to make informed decisions about their health and wellness benefits and imposes an unlawful financial burden on employees.

35. Because Waffle House has not complied with the requirement that it provide notice of the availability and scope of the reasonable alternative standard in *all of the Plans' communications* by which a Plan participant could avoid the tobacco surcharge (including through a recommendation by a personal physician), Waffle House's tobacco surcharge program is unlawful.

**D. _Waffle House's Self-Dealing and Mismanagement of Plan Funds._**

36. Waffle House controls the administration of the tobacco surcharge, determining which participants are charged and withholding the surcharge amounts directly from participants' paychecks. Upon information and belief, these amounts are not placed in a trust account for the Plan but are instead deposited into Waffle Houses' general accounts.

37. By retaining these funds, Waffle House earns interest on the withheld surcharges and reduces its own financial contributions to the Plan. This practice constitutes self-dealing and violates ERISA's fiduciary duty requirements, which mandate that Plan assets be managed exclusively in the interest of participants and beneficiaries.

38. Waffle House has fiduciary responsibilities to ensure that these funds are used to support coverage for participants' health insurance. Instead, by charging and collecting this unlawful surcharge, Waffle House increased Waffle Houses' own bottom line allowing it to realize financial benefits it would not have otherwise realized without imposing these surcharges, in violation of ERISA's fiduciary duty standards. In sum, these practices demonstrate that Waffle House's wellness program is an unreasonable, revenue-generating scheme disguised as a health initiative, directly contravening ERISA's requirements and purpose.

**ERISA BREACH OF FIDUCIARY DUTY**
**29 U.S.C. §§ 1109(a) AND 1132(a)(2)**

39. Plaintiff brings her claim for breach of fiduciary duty under U.S.C. §§ 1109(a) and 1132(a)(2) in a representative capacity for plan-wide relief and remedies.

40. At all times relevant to this lawsuit, Waffle House was the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting management of the medical benefits plans and disposition of their assets by holding the funds collected from the tobacco surcharge in its own accounts, and had discretionary authority and discretionary responsibility in the administration of the medical plan. As previously alleged, the Plan Administrator and Named Fiduciary of the Plan was Waffle House, Inc.'s Health Plan Administrative Committee.

41. Waffle House breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of the law and in violation of the terms of the Plan, as the receipt of additional funds reduced its own costs associated with funding the plan and forestalled or limited its own obligations to make contributions thereto.

42. Despite being unlawful for the reasons already discussed above, Waffle House was duty-bound to deposit the tobacco surcharge amounts into the Plan once they were collected from Plaintiff and other plan participants. Instead, on information and belief, Waffle House took those amounts, did not deposit them into the Plan, used them to offset its own contribution amounts, and otherwise used them to profit at the expense of the Plan.

43. As a result of the imposition of the tobacco surcharge, Waffle House enriched itself at the expense of the Plan, thereby resulting in it receiving a windfall.

44. Waffle House breached its fiduciary duties under ERISA in that it:

**a.** failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA. See 29 U.S.C. § 1104(a)(1)(A);

**b.** failed to discharge its duties in accordance with the documents and instruments governing the Plan insofar as the documents and instruments are consistent with ERISA, in violation of ERISA. See 29 U.S.C. §1104(a)(1)(D);

**c.** caused the Plan to engage in transactions that Waffle House knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the health plan, in violation of ERISA. See 29 U.S.C. § 1106(a)(1)(D);

**d.** dealt with assets of the Plan in Waffle House's own interests in violation of ERISA. See 29 U.S.C. § 1106(b)(1);

**e.** acted on behalf of a party whose interests were averse to the interests of the Plan or the interests of its participants and beneficiaries, in violation of ERISA. See 29 U.S.C. § 1106(b)(2); and

**f.** caused the Plan to require participants to pay a premium or contribution which was greater than such premium or contribution for a similarly situated participant enrolled in the health plan on the basis of a health status-related factor in relation to the participant or to an individual enrolled under the health plan as a dependent of the individual, in violation of ERISA. See 29 U.S.C. § 1182(b).

45. As a result of these breaches, and pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Waffle House is liable to make good to the plan all losses to the Plan resulting from its breaches, disgorge all unjust enrichment and ill-gotten profits, and to restore or provide restitution to the Plan and/or a constructive trust all profits it acquired through its violations alleged herein and which it made through use of assets of the plan, and for such other equitable or remedial relief as is proper.

46. Plaintiff is authorized to bring this action on behalf of the plan pursuant to 29 U.S.C § 1132(a)(2).

## **REQUEST FOR RELIEF**

Plaintiff, in a representative capacity on behalf of the Plan, respectfully requests that the Court enter judgment in their favor and against Waffle House as follows:

A. That the Court order Waffle House to provide all accountings necessary to determine the amounts it must make good to the plan;

B. That the Court find and adjudge that Waffle House is liable to make good to the Plan all losses to the Plan resulting from each breach of fiduciary duties, to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty, and grant all other proper relief authorized by 29 U.S.C. § 1109, including removal and replacement of the fiduciary;

C. That the Court impose a constructive trust on profits received by Waffle House as a result of fiduciary breaches committed by it or for which it is liable, upon which Plaintiff and plan participants can make claims for equitably vested benefits;

D. That the Court award reasonable attorneys' fees, costs, and expenses as provided by law;

E. That the Court order the payment of interest to the extent it is allowed by law; and

F. That the Court grant all other remedies and relief as it deems just and proper under the circumstances.

Dated: November __, 2026.

*/s/ R. Brent Irby*
R. Brent Irby
Georgia Bar No.: 224232
Lyons Irby, LLC
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 335-9102
Facsimile: (866) 618-4629
brent@lyonsirby.com

*/s/ William Greg Dobson*
William Greg Dobson
Georgia Bar No.: 237770
William Greg Dobson, PC
333 Northside Drive, Suite A
Macon, GA 31210
Email: wgd@lddlawyers.com

**DEFENDANT HEALTH PLAN ADMINISTRATIVE COMMITTEE TO BE SERVED VIA AGENT FOR LEGAL PROCESS:**

Health Plan Administrative Committee
Attn: Group Health Department
P.O. Box 6450
Norcross, GA 30091